The Chief Justice delivered the opinion of the court.
John Sharps, Jun., of the county of Sussex, being the owner of two farms in that county, mortgaged them to secure the payment of a large sum of money. Afterwards, on the first of April, 1818, he sold one of those farms to Imla Drake, for $7,287.87, and conveyed it to him, by deed of bargain and sale, containing covenants of seizin, of freedom for incumbrances, for quiet enjoyment, and of general warranty. Drake entered into possession. In the year 1823, upon a bill filed in the Court of Chancery, on the mortgage, against Drake and others, a decree was made for the sale of the two farms, to satisfy the mortgage debt, then amounting to $9,569.96. On this decree an execution was issued, and the other farm being first sold by the sheriff, produced $5,300, leaving a balance of $4,269.96. On the 7th July, 1823, in order to raise the balance, Drake’s farm was sold, and conveyed by the sheriff 'for $2;800, to Joseph Drake, the son-in-law of Imla Drake, and at the time in possession of the farm, as his tenant. Joseph Drake, in September following, sold and conveyed the farm for $3,200, to John Howell, who immediately went into possession. On the 13th of February, 1823, Sharps made an assignment for the benefit of his creditors, and within the time prescribed by the statute, Imla Drake exhibited his claim for the purchase money of the farm, $7,287.87. Upon exceptions, and a hearing in the Court of Common- Pleas, the claim was admitted to a dividend. And this decision is brought here by certiorari.
It is admitted on all hands, that if Drake is entitled to *140] exhibit a *claiin under this assignment, which will in the sequel be examined, the amount on which he is to be admitted to a dividend, is the same as he would be entitled to recover in an action against Sharps.
*177 On the part of the exceptants below, the plaintiffs in certiorari, it is insisted that Drake could not recover on the covenant of seizin, because the existence of a mortgage is no breach of that covenant; that on the covenants of quiet enjoyment and warranty, he could not recover, because there had been no ouster or eviction, which is indispensable; and that on the covenant against incumbrances, ho should be admitted to claim, at the utmost, not more than the balance, §4,269.96, unsatisfied by the first sale.
In the first place, as to the right of Drake to recover on the covenants contained in the deed. If a breach of any one of the covenants is shewn, the right of 'recovery is established, and it will remain only to ascertain the amount. One of the covenants is, that the farm, at the execution of the deed, was free from incumbrances. There was, however, upon it a subsisting incumbrance, the mortgage made by Sharps. This covenant, therefore, was broken as soon as it was made, in the same manner as the covenant of seizin is said to be broken as soon as made, if the grantor is not then seized. Hale v. Dean, 13 John. 105; Prescott v. Trueman, 4 Mass. 627; Wyman v. Ballard, 12 Mass. 304; Funk v. Voneida, 11 Serg. and Rawle, 109. Moreover, the facts in this case establish a breach of the covenants for quiet enjoyment and oí warranty. The rule in respect to these covenants was correctly stated by the plaintiff’s counsel. To constitute a breach, there must be a lawful eviction,‘or a disturbance of the possession. Dy the effect, and usually by the terms, of the decree of the Court of Chancery, the parties defendants therein are forever barred and foreclosed of all equity of redemption, of so much of the mortgaged premises, as may be sold by virtue of the decree. In this case, a sale under the decree, and a conveyance by the sheriff, were made. The purchaser was actually in possession. From the time of the conveyance by the sheriff, he held, and rightfully h eld, the possession, as his own, and shortly afterwards sold to *178 another person, whom he placed in possession. Joseph Drake, the purchaser, had previously been the tenant of Imla Drake. But from the sheriff’s conveyance the tenancy ceased. Imla Drake could legally claim neither rent nor possession against Joseph Drake. Both his title *141] *and possession ceased, and by legal means. A more complete disturbance of his possession, a more thorough eviction, could not readily be devised. The cases cited by the plaintiff’s counsel, from Johnson's Reports, do not iúipugn, but accord with, this conclusion. The principle which pervades the whole, is, that there be a disturbance in, or deprivation or cessation of, the possession, by the prosecution and operation of legal measures.
In the second place, it appearing that these three covenants are broken, without making any enquiry as to the covenant of seizin, it is to be ascertained what amount of damages the grantee, under them, is entitled to recover. The rule applicable to a case circumstanced like the present, has not been settled, so far as we are informed, by any express decision in this court. We are therefore to be governed by analogy, by sound principle, and by the light which may be reflected from the decisions in the tribunals of our sister states. At common law, on the doctrines of the ancient warranty, where the grantee, having lost the lands by the total want or failure of title in the grantor, sought to recover satisfaction by voucher or writ of warrantia chart®, he was entitled to the value of the lands at the time of the warranty, which was fixed by the purchase money, or consideration, expressed in the conveyance. To-adopt the same principle, however, in cases of partial incumbrances, would be manifest injustice. A sound rule was laid down by Chief Justice Parsons, in Massachusetts, and has been adopted by the Supreme Courts of New York and Pennsylvania. If there be a subsisting mortgage at the time of the conveyance, the grantee, under a covenant against incumbrances, may recover damages, because there is a breach, but they shall be nominal only, where he remains- *179 undisturbed, and has paid nothing to the mortgagee; for the incumbrance may be removed by the grantor, or he may be compelled by the mortgagee to discharge it, or the grantee may otherwise remain forever unaffected by it. If the grantee has extinguished the encumbrance, he shall then recover in damages the amount paid to extinguish it, if fair and reasonable, with interest, and in some eases, where an action oil account of the encumbrance has been brought against him, the costs also of such action. Prescott v. Trueman, 4 Mass. 627; Delavergne v. Norris, 7 John. 358; Stannard v. Eldridge, 16 John. 254; Funk v. Voneida, 11 Serg. and Raw. 109. These cases are, *how- [*142 ever, instances of partial incumbrances only; where the grantee retains the land, but is subjected to a partial inconvenience, and they stand on the sound principle, that, the grantee should be fully satisfied for the injury he has sustained, but that holding the land and deriving a partial benefit, his redress shall be conformed to such circumstances.
Where, however, by reason of an antecedent mortgage, the grantee is evicted, or the whole promises are absorbed in the discharge of the mortgage debt, a different rule prevails in New York. The grantee recovers to the same amount as if evicted by reason of a total want or failure of title in the grantor. The case of Waldo v. Long, 7 John. 173, was an action on covenants against incumbrances, and of power to sell. The plaintiff produced a mortgage, executed prior to the deed to him, from the defendant, and also a postea in an action of ejectment against him on the mortgage, which had been tried the same day. The plaintiff recovered the consideration money expressed in the deed, with interest and the costs of the ejectment. In Bennet v. The Executors of Jenkins, 13 John. 50, the testator had conveyed a lot of land to one Coffin, who afterwards reconveyed it to the testator, having, however, in the mean time, mortgaged it to the loan officers of Columbia county. The testator subsequently conveyed it to the plaintiff, by deed containing “ the usual full covenants.” The plaintiff was *180 evicted under a judgment and execution in ejectment, at the suit of Jackson, on the demise of Powers, who derived his title from the loan officers of Columbia county, of which suit the defendants had notice. An action was brought, on the covenants in the deed to the plaintiff, and on the trial at the circuit a case was made, stating the 'above facts, and submitting to the Supreme Court the question as to the rule of damages. That court determined, that the plaintiffs should recover the consideration money paid, and the interest .thereon, from the date of the deed from the loan officers to Powers, provided it did not exceed six years, together with the costs of the ejectment. So in Massachusetts ; for in the case of Wyman v. Ballard, 12 Mass. 304, which was under like circumstances as the last mentioned case, except that the grantee had conveyed to a third person, the court said, this third person should sue upon the covenant of warrauty, as assignee, because he had been evicted, and he would then recover the same as if evicted from total want or failure *143] *of title; which, however, is fixed in that state at a different measure from a recovery on the covenants of seizin or for quiet enjoyment.
The rule that the grantee shall recover to the same amount as if evicted from a total want or failure of title, is sound in „ principle and jxist in operation. Upon the grantee the effect is precisely the same, whether the premises are swept away from him by the overwhelming weight of an incumbrance, or by a total want of title. His recompense ought therefore to be the same. So as regards the grantor. He has covenanted against both events. And as each produces on the grantee the same effect, the liability of the grantor ought in each to be to the same extent.
It was said that Drake might have relieved and saved the property by the payment of the balance of the mortgage debt, $4,269.96; and he. should therefore have been admitted to a dividend on that amount only. But he was under no obligation or duty to discharge the incumbrance. *181 On the contrary, Sharps, the grantor, had expressly bound himself to do so, or otherwise to protect the premises from the influence of the mortgage. Drake may have been wholly unable to command sucli a sum of money; and, whether able or not, his omission of what he was under no obligation to perform, cannot impair or lessen his claim upon Sharps.
The great injustice of restraining Drake’s recovery to the balance of the mortgage debt, will be rendered very striking, by a supposition that the purchase money was yet unpaid, and remained outstanding on bonds in the hands of Sharps. Against those bonds Drako could claim only a reduction for the balance, $4,269.96. And tho residue, $3,017.91, Sharps would place in his own pocket, notwithstanding Drake had lost tho property, from a cause against which Sharps had covenanted to protect him.
It was said on the argument at tho bar, that the loss occasioned by the depreciation in the general value of property between the sale to Drake and that made by the sheriff, ought not to fall on Sharps. But with this depreciation tho questions have no just connection. Drake is deprived of the property, as I have remarked, by a stroke against which Sharps engaged to protect him. Tho consideration for which he paid his money has totally failed. The money he paid ought, therefore, to be restored to him. But if the question, on whom the depreciation ought to fall, be considered, it *is perfect justice that it should fall [*144 on Sharps. He assumed the responsibility by his covenants. Had his assertion that the premises wore clear of incumbrances, been true, the loss from depreciation must have been borne by the purchaser. Being untrue, the risk was upon him while the incumbrance remained. If Drake had lost the premises from a want of title in Sharps, he must have repaid the original consideration money. He could not, on common law principles, have claimed a reduction on account of an intermediate depreciation of valuó. Nor can he where the loss is total, occasioned by the existence of an incumbrance.
*182 The sum sanctioned by the Court of Common Pleas, is not, therefore, in our opinion, beyond the just and legal claims of Drake.
3. It was insisted by the plaintiff’s counsel, as I have already suggested, that Drake was not entitled to come in under this assignment, because it was made in February, 1823, and his claim did not exist until the sheriff’s sale, in July following. But if the covenant against incumbrances ■&as, as has been stated, previously broken, a claim did exist at the time of the assignment. The actual amount of the claim might not have been certainly fixed or ascertained until July, but it was fi±ed in season to enable him to exhibit his claim, under oath, within the time limited by the statute.
We find no caufee of reversal in the proceedings of the Court of Common Pleas.